AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED BY ___MM___ D.C.

AUG 30 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

United States of America )
v. )
)  Case No. 19-8368-BER
CORNELIUS R. CAPLE, a/k/a "Murda," )
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  August 27, 2019  in the county of  Palm Beach  in the  Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Possession with Intent to Distribute a Controlled substance, namely a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841 (a)(1). |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Joseph C. Verneer, IV, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/30/19

_____
*Judge's signature*

City and state: West Palm Beach, FL

Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT
OF
SPECIAL AGENT
JOSEPH C. VERNEER, IV
DRUG ENFORCEMENT ADMINISTRATION
<u>UNITED STATES DEPARTMENT OF JUSTICE</u>**

I, Joseph C. Verneer, IV, being duly sworn, depose and state as follows:

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) United States Department of Justice (DOJ), currently assigned to the Miami Field Division, West Palm Beach District Office, in West Palm Beach, Florida. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1)(e) and Title 21, United States Code.

2. I have been a SA with the DEA since February 21, 2016. Prior to my employment with DEA, I served as a Federal Air Marshal with the Federal Air Marshal Service in the New York and Miami Field Office from March 2009 to February 2016. I am currently assigned to investigations dealing with all aspects of importation, manufacturing, and distribution of illegal drugs, to include, but not limited to, heroin, fentanyl, cocaine hydrochloride and cocaine base, commonly referred to as "crack" cocaine.

3. While employed with the DEA, I have received ongoing training to include classes in Basic Telecommunication Exploitation, Internet Telecommunication Exploitation and Wire and Oral Telecommunication Interceptions. As a SA with the DEA, I have conducted investigations of, and have been instructed in investigative techniques concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining

places for purposes of manufacturing, distributing or using controlled substances and conspiracies to commit these offenses, in violation of Title 21, United States Code Sections 841(a)(1), 843(b), 856, 846, 952, and 963, respectively. Based upon this experience, and through the experience of other agents and detectives with numerous years of experience, I have also become well versed in the methodology utilized in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations. I have also participated in physical surveillances, electronic surveillances, and wire surveillances. Additionally, I have arrested individuals for various drug violations and have spoken with a number of drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. As a result of my law enforcement experiences, and the experience of other agents and detectives I have worked with in dealing with drug traffickers, I have found that they rarely speak openly about their illegal narcotics transactions. Instead, they use coded language to disguise their conversations about illegal narcotics transactions and also communicate via text messages.

## Purpose of this Affidavit

4.  The information in this affidavit is personally known to me or has been provided to me by other law enforcement officers either in person or through a review of their reports. The limited purpose of this affidavit is to establish probable cause for the arrest of Cornelius R. CAPLE, a/k/a "Murda," for having committed the criminal offense of Distribution of a Controlled Substance, namely a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance in violation of Title 21, United States Code, Section 841(a)(1). Accordingly, this affidavit does not set forth every fact that is known to me, or other officers, regarding Cornelius R. CAPLE, a/k/a "Murda."

**Controlled Purchases of Heroin from Cornelius CAPLE, a/k/a "Murda,"**

5.     On February 22, 2019, a Palm Beach County Sheriff's Office agent acting in an undercover capacity (UC) set up a controlled purchase of heroin from Cornelius R. CAPLE, a/k/a "Murda," (CAPLE).  The UC was provided $100.00 in U.S. currency to complete the purchase of heroin.  The UC called CAPLE, who agreed to sell the UC $100.00 worth of heroin at the intersection of Sapodilla Ave. and 10th Street, in West Palm Beach, in Palm Beach County, within the Southern District of Florida.  When the UC arrived at the pre-arranged location, CAPLE entered the UC vehicle and attempted to give the UC a small clear plastic baggie, which contained several, white rock like pieces, which based upon the UC's training and experience he knew to be cocaine base, commonly referred to as "crack" cocaine.  The UC told CAPLE that the UC wanted "boy," a common street term for heroin not "hard," a common street term for "crack" cocaine.  CAPLE stated, "Oh my bad," exited the UC vehicle and proceeded to a small concrete wall to retrieve an unknown item. Once CAPLE returned to the UC vehicle CAPLE handed the UC a small clear plastic baggie containing three clear capsules containing a brown powdery substance.

6.     CAPLE told the UC he was two capsules short and that he (CAPLE) needed to call his "Uncle" whom CAPLE stated was his heroin source.  Shortly thereafter, an older unidentified black male was observed walking towards a residence in the area.  CAPLE then told the UC that the unidentified male was CAPLE's "Uncle."  CAPLE exited the UC vehicle and followed the black male ("Uncle") into the front yard of a residence close to the vehicle.  A short while later, CAPLE returned to the UC vehicle and gave the UC two additional clear capsules containing a brown powdery substance.  In return, the UC handed CAPLE $100.00 in U.S. currency.  CAPLE told the UC to call him for future deals.  Thereafter, both CAPLE and the UC left the area. The capsules were subsequently sent to the Palm Beach County Crime Laboratory for forensic

chemical analysis which resulted in confirmation that the brown powdery substance sold to the UC by CAPLE was a mixture of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance.

7. On March 5, 2019, a UC contacted CAPLE and arranged to purchase $100.00 of heroin. CAPLE agreed to meet the UC in the area of 630 10th Street, West Palm Beach, in Palm-Beach County, within the Southern District of Florida. The UC observed CAPLE near the area of the pre-arranged location. Ultimately, the UC parked near the curb and CAPLE entered the UC vehicle. The UC then handed CAPLE $100.00 in U.S. currency and CAPLE handed the UC a clear cellophane wrapper containing five capsules containing a tan powdery substance of suspected heroin. The capsules were subsequently sent to the Palm Beach County Crime Laboratory for forensic chemical analysis which resulted in confirmation that the tan powdery substance sold to the UC by CAPLE was a mixture of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance.

8. On March 8, 2019, a UC called CAPLE to arrange a meeting to purchase $100.00 of heroin. CAPLE agreed to the meeting and requested the UC to meet at the same location of the previous buy. The UC was able to record the meeting with an audio and video device. Once CAPLE observed the UC arrive in the area, CAPLE directed the UC to park along the curb. CAPLE entered the UC vehicle and the UC gave CAPLE $100.00 in U.S. currency in exchange for a small clear plastic baggie containing a tan powdery substance. CAPLE exited the UC vehicle and left the area. The UC inspected the suspected heroin and within the clear plastic baggie was another clear plastic baggie, which contained a white powdery substance. The UC called CAPLE and asked what the white substance was. CAPLE replied that it was a "new" product to test "for free." The substances purchased from CAPLE were subsequently sent to the Palm Beach County

Crime Laboratory for forensic chemical analysis. The lab results are pending. No field test was performed due to the danger associated with possible fentanyl exposure.

9. On July 17, 2019, a UC contacted CAPLE to purchase $60.00 of heroin. The meeting location was set for a McDonalds located in West Palm Beach, in Palm Beach County, within the Southern District of Florida. After the UC arrived at the meet location, CAPLE entered the UC vehicle and handed the UC a small silver wrapper, which contained three plastic capsules containing a tan powdery substance with a gross weight of approximately 6 grams. In return, the UC handed CAPLE $60.00 in U.S. currency. CAPLE then asked the UC to drop him off next to a silver Mazda sedan. CAPLE exited the UC vehicle and entered the driver's side of the silver Mazda vehicle. The UC and CAPLE then left the area. Thereafter, law enforcement conducted a field test of the substance purchased from CAPLE and the results were negative for the presence of heroin. The capsules were subsequently sent to the Palm Beach County Crime Laboratory for forensic chemical analysis. The lab results are currently pending.

10. On August 27, 2019, a UC made contact with CAPLE to purchase $100.00 of heroin. CAPLE requested that the UC meet CAPLE at the Valero gas station located in West Palm Beach, in Palm Beach County, within the Southern District of Florida. The UC drove to the gas station. Once the UC arrived, a 2015 silver Mazda bearing a Florida License plate with assigned number JUCP30 (TARGET VEHICLE) arrived at the gas station. CAPLE exited the TARGET VEHICLE and entered the UC vehicle. During a video-recorded meeting, CAPLE gave the UC multiple clear capsules containing a powdery substance of suspected heroin with an approximate gross weight of 7 grams. In return, the UC gave CAPLE $100.00 in U.S. currency. CAPLE and the UC then left the area. Thereafter, law enforcement conducted a field test of the powdery

5

substance in the capsules purchased from CAPLE, which resulted in a positive finding for the presence of heroin, a Schedule I controlled substance.

## Conclusion

11. Therefore, based on the facts and information set forth in this affidavit, I respectfully submit that there is probable cause to believe that on August 27, 2019, Cornelius R. CAPLE, a/k/a "Murda," did commit the criminal offense of Distribution of a Controlled Substance, namely a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER YOUR AFFIANT SAITH NAUGHT.

_____
JOSEPH C. VERNEER, IV
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before me this 30 day of August, 2019, at West Palm Beach, Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE

6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 19-8368-BER

### BOND RECOMMENDATION

DEFENDANT: CORNELIUS R. CAPLE, a/k/a "Murda,"

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Jennifer C. Nucci

Last Known Address: 2450 Ave. H West

Riviera Beach, Florida 33404

What Facility: _____

Agent(s): S/A Joseph C. Verneer, IV
(FBI) (SECRET SERVICE) (**DEA**) (IRS) (ICE) (OTHER)
DEA